WHITNEY (CONSOLIDATED FRUIT-JAR CO. v.). See Cases Nos. 3,132–3,134.
WHITNEY (COOK v.). See Case No. 3,166.

---

## Case No. 17,584.

### WHITNEY v. EAGER.

[Crabbe, 422.] [1]

District Court, E. D. Pennsylvania. May 24, 1841.

SEAMEN'S WAGES — RECEIPT — RELEASE OF COMPLAINTS.

1. Where the payment of a seaman's wages is refused unless he signs a receipt containing a release of all complaints against his officers, no attention whatever will be paid to such release.

[Cited in Hanson v. Fowle, Case No. 6,042.]

2. The court will consider the situation of the parties in fixing the amount of damages to be awarded.

This was a libel for assault and battery [by F. Gerard Whitney, mariner, against John Eager, master of the brig Oriole]. It appeared, beside the evidence of the assault and battery, that a receipt by the libellant, which contained a release of all complaints on his part against his officers, had been signed by him as the only means of obtaining his wages, which were refused to him unless this was done.

Mr. Waln, for libellant.
Mr. Gillou, for respondent.

HOPKINSON, District Judge. In deciding questions of this sort, between the master of a vessel and his men, it has been my endeavor to preserve the ship from the danger to which she would be exposed by the refractory disobedience and turbulence of the crew, and at the same time to protect the crew from cruelty and unnecessary violence on the part of the master. Indeed, one of the most effectual means of securing their submission, even under ill-treatment, is that they shall be assured they will receive redress at the end of the voyage for any abuse of the power of the master over them. I have, in a late case, explained the principles on which my decisions are founded in such cases. I would avoid on the one hand, encouraging frivolous and vexatious complaints; and, on the other, be ready to give adequate redress for real and substantial injuries.

To maintain the necessary discipline of the ship, great power is given to the master, and obedience and non-resistance are exacted from the seamen. But the master is not therefore constituted an unrestrained tyrant, nor the sailors made his defenceless victims. They are always and everywhere under the protection of the law, whether in the service of their own country, or on the most distant seas. They must be patient and submissive under suffering, and wait for the season of redress, when the same power of the law which has sustained the master in his authority, will make him account for his abuse of it.

In this case there has been a clear and gross abuse of authority, a wanton cruelty, which neither the law nor common humanity can justify. Not a witness, except the first mate (his aider and abettor), has said a word for the captain, and the mate has been able to tell but a poor story for him. On the other hand, two of the seamen, the cook, the steward, the second mate, and another seaman. Alfred Courcelot, a clearheaded, intelligent young man, brother-in-law to one of the owners, all agree as to the excessive cruelty of the captain in beating the libellant, who has marks of it on his person to this day. The most unaccountable circumstance of the case is the want of any provocation, much less justification, for this violence. Even the first mate can make out nothing for the defence, except that the libellant did not steer well; except this, and accidentally, when washing the deck, spilling some water on the captain's new boots, no pretence has been set up for the beating, kicking, and seizing up of the libellant, and the unmerciful lashing inflicted upon him. All the witnesses testify to his peaceable temper and good conduct.

As to the receipt extorted from the libellant, as the condition of payment of his wages, by which he was required not only to acquit the owners of any claim for wages, but to release the officers of the ship from all claims and damages: it has. more than once been decided in this court, that no attention will be paid to such releases. An acquittance for the wages is the proper object and office of the receipt to be given on the payment of them; and to couple it with a release to the officers for all personal wrongs and injuries, especially where the

wages are denied without it, will always be regarded as an attempt to impose upon the seaman, and as betraying a consciousness of wrong, and a desire to get rid of it in this way. The libellant in this case refused to sign this paper, until he found he could not obtain his wages without it.

I have been surprised that the owners of vessels do not give some attention in selecting their masters, to the temper and manners of the individual. In passenger ships these are matters of real importance. What can be more disagreeable and disgusting to passengers than to witness daily, or hourly, the indulgence by the master, of a violent and cruel temper, and to hear from him coarse and abusive language, accompanied by vulgar swearing in his intercourse with the crew?

The damages claimed in this libel are $5,000. This is probably as much as the respondent would get in ten years of his life, and more than the libellant could earn in his whole life. This will not do; we must not become oppressors in our endeavors to punish and prevent oppression. We must consider the situation of both parties, and while we can imagine a case between parties in which this amount of damages would not be excessive for the same assault, it cannot be a case between the master and mariner of a ship. We must not bring distress and ruin on the one, to redress a wrong to the other; for the assault complained of, although severe and unjust, has produced no serious and permanent consequences to the libellant. It is enough that the respondent shall receive a lesson to restrain his temper, and to know that whatever his power may be at sea, a greater power is at home, to call him to account for the use he has made of it. This, with a reasonable compensation to the libellant, for his injuries, will fully meet the justice of the case.

Decree for the libellant for $100, and costs.